IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OTIS DAVIS, SR., Individually, <br> DOROTHY O. JACKSON, Individually, <br> and LASANDRA TRAVIS-DAVIS, <br> Individually and as the Administrator <br> of the Estate of Decedent, <br> BERTRAND SYJUAN DAVIS, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW TERRY, <br><br> Defendant. | § § § § § § § § § § § § § § § Civil Action No. 3:16-CV-2548-L |

**DEFENDANT'S WITNESS LIST**

TO THE HONORABLE COURT:

  Defendant Matthew Terry, pursuant to the Court's Fifth Amended Scheduling Order entered on January 28, 2021 (ECF No. 96), files his witness list.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ Lindsay Wilson Gowin*
Lindsay Wilson Gowin
Senior Assistant City Attorney
Texas State Bar No. 24111401
lindsay.gowin@dallascityhall.com

J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallascityhall.com

Devin Q. Alexander
Assistant City Attorney
Texas State Bar No. 24104554
devin.alexander@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:    214-670-3519
Telecopier:   214-670-0622

*Attorneys for Defendant Matthew Terry*

## CERTIFICATE OF SERVICE

  I certify that on June 23, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

               */s/ Lindsay Wilson Gowin*

## DEFENDANT'S WITNESS LIST

1.     Witness:     **Lasandra Travis-Davis**
   Testimony:     possible
   Deposed:     no

   Lasandra Travis-Davis is one of the named plaintiffs. The full extent of her testimony is not presently known, but she likely will testify that she observed her husband, Bertrand Davis ("Davis"), struggle with Sr. Cpl. Matthew Terry and other Dallas Police Department ("DPD") officers, that Davis has used unlawful controlled substances in the past, that Davis was acting erratically, and that Davis failed to comply with the officers' several verbal commands.

2.     Witness:     **Sr. Cpl. Matthew Terry #8915**
   Testimony:     probable
   Deposed:     no

   Matthew Terry ("Terry") is a DPD officer. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his observations and recollection during his encounter with Davis, (4) his observations of Davis's physical conditions, (5) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (6) other actions taken by him in connection with the incident that is the subject of the Plaintiffs' claims.

   Terry will testify that at the time of his encounter with Bertrand Davis on August 27, 2015, Terry was a senior corporal in the Dallas Police Department ("DPD"), that he was acting within the course and scope of his duties as a DPD officer, and that he was discharging his discretionary authority as a peace officer.

   Terry will further testify that on August 27, 2015, at about 1:30 p.m., he responded to a 9-1-1 call regarding a robbery in progress on Penelope Street in Dallas. The dispatcher informed Terry that the suspect was armed with a knife and gun. When Terry arrived at the scene, he observed a house on fire, several uniformed DPD police officers, and a man later identified as Bertrand Davis, holding a woman by her neck and attempting to force her into a silver Mercedes. Terry and several police officers attempted to arrest Davis, but he resisted, and a struggle ensued. As Terry and another officer attempted to handcuff Davis, Davis broke free and swung a clenched fist at Terry's head. Terry discharged his Taser at Davis, who briefly fell to the ground but quickly got back up. Terry discharged his Taser a second time but it was ineffective. Davis then grabbed the woman, who Terry later learned was Bertrand Davis's wife, Lasandra Travis-Davis, and ran towards the driver's side of the silver Mercedes. Davis tried to force Mrs. Davis inside car. Terry freed Mrs. Davis from Bertrand Davis's grasp, and Davis quickly entered the driver's side door and lunged toward the to the front right passenger seat. Davis began searching through his pockets. Terry immediately dropped his Taser and drew his service weapon. As Davis reached for the floor area of the car, Terry heard a fellow officer yell "gun[,]" at which time Terry saw a black handgun inside the car. Fearing that Davis might use the gun to

shoot Terry or others , Terry discharged his service weapon and shot Davis twice. Terry will testify that he had probable cause to believe based on the facts and circumstances known to him at the time that Davis presented an imminent threat of serious bodily injury or death, and that Terry's use of force was reasonable and necessary to prevent Davis's use of unlawful force against him.

3.  Witness: **Sr. Cpl. Scott Neal #9065**
    Testimony: probable
    Deposed: no

    Scott Neal ("Neal") is a Dallas police officer. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his observations and recollection during his encounter with Davis, (4) his observations of Davis's physical conditions, (5) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (6) other actions taken by him in connection with the incident that is the subject of the Plaintiffs' claims.

    Neal will testify that on August 27, 2015, at about 1:30 p.m., he responded to a call regarding a robbery in progress on Penelope Street in Dallas. Neal learned from the call sheet that the suspect was a black male, that he had set a residence on fire, and that he was possibly armed with a handgun. Upon arrival at the scene, Neal observed several uniformed police officers attempting to detain a man, later identified as Bertrand Davis. Neal drew his Taser and went over to assist. As officers were attempting to handcuff Davis, Davis broke free and began swinging his fists and elbows at them. Neal discharged his taser at Davis, which caused Davis to tighten up. Neal then observed another officer discharge his Taser at Davis, who fell to the ground but immediately got back on his feet. Neal discharged his taser a second time, which had no effect. After three failed attempts to de-escalate the situation with Tasers, another police officer discharged his Taser as Davis moved towards the driver's side of the Mercedes. Davis entered the driver's side door and quickly moved toward the front right passenger seat. Davis began searching through his pockets and attempted to remove a large object. Neal saw a black handgun in Davis's right hand and immediately yelled "gun[.]"

4.  Witness: **Officer Bryan Joseph #9479**
    Testimony: probable
    Deposed: no

    Bryan Joseph ("Joseph") is a Dallas police officer. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his observations and recollection during his encounter with Davis, (4) his observations of Davis's physical conditions, (5) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (6) other actions taken by him in connection with the incident that is the subject of the Plaintiffs' claims.

Joseph will testify that on August 27, 2015, at about 1:35 p.m., he and his partner for that day, Dallas police officer Kevin Thomas, responded to a call regarding a robbery in progress on Penelope Street in Dallas. Upon arrival at the scene, Joseph observed a house on fire and several witnesses in front of the burning house. Witnesses at the scene informed him that Davis set the house on fire, and that Davis might have a weapon. Joseph then observed Davis and Lasandra Travis-Davis attempting to get into the silver Mercedes. Joseph attempted to shut the car door but was unable to do so because Davis and Lasandra Travis-Davis were wedged in the door. Joseph and Thomas struggled to place Davis in handcuffs. During the struggle, Joseph heard another officer yell "Taser," and he disengaged from Davis. Joseph observed Davis pull at the taser wires, and fall to the ground but get back up. Davis then entered the driver's side door of the Mercedes and went to the front right passenger seat. Davis began searching through his pockets and around his waistband. Joseph then heard a gunshot and saw that Davis had stopped moving inside the Mercedes.

5. Witness: **Officer Kevin Thomas #10816**
   Testimony: probable
   Deposed: no

Kevin Thomas ("Thomas") is a Dallas police officer. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his observations and recollection during his encounter with Davis, (4) his observations of Davis's physical conditions, (5) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (6) other actions taken by him in connection with the incident that is the subject of the Plaintiffs' claims.

Thomas will testify that on August 27, 2015, at about 1:30 p.m., he, and his partner for that day, Dallas police officer Bryan Joseph, responded to a 911 call regarding a robbery in progress on Penelope Street in Dallas. Upon arrival at the scene, Thomas observed a house on fire and several witnesses in front of the burning house. Witnesses informed the he and Officer Joseph that Bertrand Davis set the house on fire, and that he might have a weapon. Joseph and Thomas approached Davis and gave him several verbal commands to surrender and show his hands, which Davis refused to do. Joseph and Thomas drew their service weapons, while other officers discharged their tasers. Davis appeared to be unaffected by the tasers. As officers attempted to handcuff Davis, Davis broke free and jumped in the driver's side door of a nearby parked Mercedes vehicle. Davis went to the front right passenger seat and began to search for something in the vehicle. Thomas heard two gunshots, and saw Davis stop moving inside the Mercedes.

6. Witness: **Officer Joe King #7482**
   Testimony: probable
   Deposed: no

Joe King ("King") is a Dallas police officer who responded to the scene. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his observations and

6

recollection during his encounter with Davis, (4) his observations of Davis's physical conditions, (5) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (6) other actions taken by him in connection with the incident that is the subject of the Plaintiffs' claims.

King will testify that on August 27, 2015, he responded to a 9-1-1 police dispatch regarding a robbery in progress on Penelope Street in Dallas. King learned from the call sheet that the suspect, later identified as Bertrand Davis, was in a nearby vacant lot, that he had set the complainant's residence on fire, and that he might be armed with a gun. Upon arrival at the scene, King observed Davis struggling with several uniformed police officers. Davis had one handcuff on his right hand, and a discharged taser prong in his body. King saw Davis overpower the officers and enter the driver's side door of a silver Mercedes. Davis began searching through his pockets, and King retreated to the rear of the vehicle. King heard several officers give Davis verbal commands to show his hands, but Davis refused. King heard an officer yell, "gun," followed by two gunshots.

7. Witness:    **Officer Rachel Rice #10869**
   Testimony:  probable
   Deposed:    no

Rachel Rice is a Dallas police officer who responded to the scene. She will testify that she arrived at the scene and restrained Ms. Travis-Davis at a safe distance while officers attempted to apprehend Bertrand Davis. Officer Rice will testify about her observations of Davis, his demeanor and actions immediately before the shooting. She will also testify about restraining and comforting Ms. Travis-Davis while paramedics transported Davis to the hospital, and the statements that Ms. Travis-Davis made to or in front of Officer Rice concerning the events preceding the shooting, Davis's contemporaneous and habitual drug use, Davis's serious mental health and substance abuse issues, and Davis's recent in-patient psychiatric treatment.

8. Witness:    **Detective Dale Richardson #6361**
   Testimony:  possible
   Deposed:    no

Dale Richardson is a detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, evidence gathered during the investigation of the shooting, and his interactions with witness Renaldo Christian.

9. Witness:    **Detective Robert W. Laurence #9191**
   Testimony:  possible
   Deposed:    no

Robert Laurence is a detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, evidence gathered during the investigation of the shooting, and his interactions with Lasandra Travis-Davis.

10. Witness:      **Detective Eduardo A. Ibarra**
    Testimony:    possible
    Deposed:      no

Eduardo Ibarra is a detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, and about physical evidence gathered during the the shooting investigation. He will testify about Det. Ermatinger's interviews of witnesses Lee Davis and Iesha Washington, during which they recounted Davis's demeanor and actions just prior to the shooting.

11. Witness:      **Detective Robert Ermatinger #5051**
    Testimony:    probable
    Deposed:      no

Robert Ermatinger, Jr. is a former detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, and about physical evidence gathered during the the shooting investigation. He will testify about his interviews of witnesses Lee Davis and Iesha Washington, during which they recounted Davis's demeanor and actions just prior to the shooting, and about Renaldo Christian's 911 call.

12. Witness:      **Detective Richard Duggan**
    Testimony:    possible
    Deposed:      yes

Richard Duggan is a detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, and about physical evidence gathered during the course of the shooting investigation.

13. Witness:      **Detective Michael Mendez #4587**
    Testimony:    probable
    Deposed:      no

Michael Mendez is a detective in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a Dallas police officer and detective, and about evidence gathered during the shooting investigation. He will testify about his interviews of Lasandra Travis-Davis and witnesses Reynaldo Christian and Jeanette McDonald, during which they recounted Davis's demeanor and actions just prior to the shooting. He will also testify about Mr. Christian's 911 call.

14. Witness:     **Justin O'Donnell #T237**
    Testimony:   possible
    Deposed:     no

Justice O'Donnell is a crime scene analyst in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a crime scene analyst, and the physical evidence gathered during shooting investigation.

15. Witness:     **S. Kearney #T234**
    Testimony:   possible
    Deposed:     no

S. Kearney is a crime scene analyst in the DPD who assisted in the internal police department investigation of the shooting. He will testify about his training and experience as a crime scene analyst, the physical evidence gathered during shooting investigation, and the scene sketch he prepared to reflect the scene layout and locations where physical evidence was recovered.

16. Witness:     **Sr. Cpl. Joseph Hawkins #7838**
    Testimony:   probable
    Deposed:     no

Joseph Hawkins is a Dallas police officer and instructor at DPD's police academy. He will testify about (1) his training and experience as a Dallas police officer, (2) the training provided to all DPD officers regarding use of force, including Tasers and deadly force, and (3) the use of Tasers by several officers during the incident. Sr. Cpl. Hawkins will also opine that Sr. Cpl. Terry's use of force was consistent with the training provided by the Dallas Police Department, that a reasonable police officer could have believed that there was probable cause to believe that Bertrand Davis posed an imminent threat of serious bodily injury or death to Sr. Cpl. Terry or others, and that Terry's use of deadly force was reasonable and necessary to prevent Davis from using unlawful force.

17. Witness:     **Sr. Cpl. David Andree #6937**
    Testimony:   possible
    Deposed:     no

David Andree is a Dallas police officer assigned to the Crime Scene Response Section. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (4) his investigation of the incident that forms the bases of the of the Plaintiffs' claims, including his interactions with other Dallas police personnel.

18. Witness:        **Maurice Thomas #T177**
    Testimony:    possible
    Deposed:      no

Maurice Thomas is a crime scene supervisor IV in DPD who assisted in the internal police department investigation of the shooting. He will testify about (1) his training and experience as a Dallas police officer, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his knowledge of police department practices and customs relating to the use of force, and internal administrative and criminal investigations of allegations of the use of excessive force, and (4) his investigation of the incident that forms the bases of the of the Plaintiffs' claims, including his interactions with other Dallas police personnel.

19. Witness:        **Matthew Shomer DF-R #110511**
    Testimony:    probable
    Deposed:      no

Matthew Shomer is a former a DF-R paramedic who treated Bertrand Davis at the scene. He will testify about (1) his training and experience as a DF-R paramedic, (2) the reasons for his involvement in the incident that is the basis of this civil action, (3) his treatment of Bertrand Davis, and (4) his observations of the scene of the incident that forms the bases of the Plaintiffs' claims, including his interactions with other DPD and DF-R personnel.

Shomer will testify that on August 27, 2015, he observed Davis behaving erratically and possibly on a stimulant. Shomer will testify that he observed Davis struggle with several Dallas police officers, that he appeared to be unaffected by the Tasers discharged at him, that taser prongs were lodged into Davis's body, that Davis ignored the officers' verbal commands, and that Davis entered a Silver Mercedes and appear to look for something. Shomer will testify that he heard someone yell, "gun," followed by two gunshot shots fired in succession. Shomer will testify that he observed gunshot wounds in Davis's wrist, abdomen, and chest. Shomer will also testify that paramedics removed taser prongs from Davis before transporting him to the hospital.

20. Witness:        **Jeanette Laverne McDaniel**
    Testimony:    probable
    Deposed:      no

Jeanette McDaniel is a witness who will testify about her observations of Davis prior to the shooting, including his demeanor, appearance, and behavior. She will also testify that she observed Reynaldo Christian flee from his house and call 911 for help and protection, that she also called 911 to report that Davis had set Mr. Christian's house on fire. She will also testify about Bertrand Davis and Lasandra Davis's interactions with one another prior to officers arriving on the scene, their interactions with police officers prior to the shooting, McDaniel's interactions with Reynaldo Christian, DPD officers, and DF-R personnel.

21. Witness:        **Irma Jean Daniels a/k/a Iesha Washington**
    Testimony:    probable
    Deposed:      no

10

Irma Daniels a/k/a Iesha Washington is a non-party witness who will testify about that Davis threatened Curtis Lee Wilson a/k/a Lee Davis a/k/a Lemuel Wilson with a black pistol, that Davis was looking for cocaine, and that Davis attempted to steal her property before Davis's encounter with DPD officers.

22. Witness: **Curtis Lee Wilson a/k/a Lee Davis a/k/a Lemuel Wilson**
    Testimony: possible
    Deposed: no

Curtis Wilson/Lee Davis is a non-party witness who will testify that Bertrand Davis threatened him with a black pistol at another location shortly before his encounter with DPD officers.

23. Witness: **Renaldo Christian**
    Testimony: probable
    Deposed: no

Renaldo Christian is a witness who will testify that on August 27, 2015, he observed Davis with a gun, that Davis came to his home and tried to rob him, that Davis acted as if he had ingested drugs, that he had observed Davis use drugs in the past, that Davis set his home on fire, that he called 911 to report that Davis set his house on fire that Davis failed to comply with police officers' verbal commands and physically struggled with them. He will also testify about his observations of Sr. Cpl. Terry discharging his service weapon and taser.

24. Witness: **Dr. Stephanie Burton, M.D.**
    Testimony: Expert
    Deposed: no

Dr. Stephanie Burton is a "retained" expert witness. She will testify as to (1) her training and experience as forensic pathologist, (2) her qualifications to provide expert testimony and opinions, (3) the process of her autopsy of Bertrand Davis, (4) her methodology and analysis protocol and its general acceptance in the scientific community, and (5) findings of the autopsy. Dr. Burton will testify to the findings of her autopsy, which are recited in her autopsy report. Dr. Burton will testify about the locations of Davis's gunshot wounds, the nature and extent of Davis's injuries, the substances detected in Davis's bloodstream, the effects of those substances, the conclusions of the autopsy, and the meaning of the finding that the manner of death was "homicide."

25. Witness: **Joshua Perdomo, M.S.**
    Testimony: Expert
    Deposed: no

Joshua Perdomo is a non-retained expert serologist employed by the Southwestern Institute of Forensic Sciences at Dallas. He will testify as to (1) his training and experience as a forensic biologist examiner, (2) his qualifications to provide expert testimony and opinions, (3) his methodology and analysis protocol and its general acceptance in the scientific community, (4) the information on which he relied to form his expert opinions, (5) and

results of his analysis of samples collected from Davis and various items collected by DPD officers including but not limited to his conclusion that the fluids found on Davis's gun was blood.

26. Witness: **Kenneth Balagot, M.S.**
    Testimony: Expert
    Deposed: no

Kenneth Balagot is a non-retained expert DNA analyst employed by the Southwestern Institute of Forensic Sciences at Dallas. He will testify as to (1) his training and experience as a forensic biologist examiner, (2) his qualifications to provide expert testimony and opinions, (3) his methodology and analysis protocol and its general acceptance in the scientific community, (4) the information on which he relied to form his expert opinions, and (5) the results of his DNA analysis comparing blood samples collected from Davis and from Davis's gun and magazine, including but not limited to his conclusion that the blood belonged to Davis.

27. Witness: **Steven D. Ashley**
    Testimony: Expert
    Deposed: no

Steven Ashley is a retained expert witness. He will testify as to (1) his training and experience as a retired police officer (2) his qualifications to provide expert testimony and opinions, (3) his methodology and analysis protocol and its general acceptance in the scientific community, (4) the information on which he relied to form his expert opinions, and (5) results of his analysis of Terry's actions as it pertains to Plaintiffs' claims, including but not limited to his ultimate conclusion that Terry's use of force was justified, appropriate, and in accordance with DPD's properly modeled general orders. For further information, please see Mr. Ashley's expert report.

28. Witness: **Helen Reynolds**
    Testimony: Expert
    Deposed: no

Helen Reynolds is a retained expert witness. She will testify as to (1) her training and experience as an economist (2) her qualifications to provide expert testimony and opinions, (3) her methodology and analysis protocol and its general acceptance in the scientific community, (4) the information on which she relied to form his expert opinions, (5) her conclusions about quantification of damages experienced by Plaintiffs as a result of Davis's death, and (6) flaws in the analysis rendered by Plaintiffs' retained damages expert.

29. Witness: **Custodian of Records**, **Dallas Police Department**
    Testimony: possible
    Deposed: no

If necessary, a custodian of records will be called to authenticate exhibits in the custody of the Dallas Police Department.